Michael E. Salzman
Hannah Miller
Joanne Liu
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY  10004
(212) 837-6000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------

EDWARD W. HARDY,

                          Plaintiff,

    against

JAMES ORTIZ and STRANGEMEN THEATRE
COMPANY INC.,

                          Defendants.

_____

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Edward W. Hardy ("Hardy"), by his attorneys, Hughes Hubbard & Reed LLP,

for his complaint in this action alleges:

**NATURE OF ACTION**

1.      This is a civil action for copyright infringement and breach of contract.

Hardy's claims against the defendants arise under the Copyright Act of 1976, as amended, 17

U.S.C. §§ 101 et seq. (the "Copyright Act") and the common law of New York.  They arise from

the misappropriation by defendants of music composed by Hardy and breaches of agreements

pursuant to which the music was incorporated into a musical.  Defendants have proceeded to

produce performances of the musical while using Hardy's copyright to the score and contract

rights to the musical as a whole without Hardy's consent and in violation of Hardy's rights.

**THE PARTIES**

2.      Plaintiff Edward W. Hardy ("Hardy" or "Plaintiff") is a resident of New

York and does substantial business in New York County, New York.  He is a violinist, composer

and songwriter.

3.      Defendant James Ortiz ("Ortiz") is a resident of New York and resides in Queens, New York.  Ortiz is a freelancing director, actor, writer, designer, and puppeteer.

4.      Defendant Strangemen Theatre Company Inc. ("Strangemen") is a business corporation organized under the laws of New York.  Its principal place of business is at 165 Sherman Avenue, Apt. 2P, New York, New York 10034.  Upon information and belief, Strangemen is in the business of producing and staging plays.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction of this action under 17 U.S.C. § 501, et seq., and 28 U.S.C. §1338(a).

6.      This Court has supplemental jurisdiction under 28 U.S.C. §1367(a) over all other claims in the action, which form part of the same case and controversy.

7.      Venue in this district is proper under 28 U.S.C. § 1391(b) in that Defendants either reside or are doing business in this district.

## FACTUAL BACKGROUND

### CREATION OF THE MUSIC AND THE PLAY

8.      In 2012, Hardy composed an original musical composition entitled *The Woodsman* (the "Music"), based on certain characters and plot aspects of the L. Frank Baum novel, *The Wonderful Wizard of Oz*.  *The Wonderful Wizard of Oz* is in the public domain. Hardy composed the Music at the suggestion of Ortiz, who proposed that they create a pantomime play with music and puppets based on *The Wonderful Wizard of Oz.* The Music was incorporated into the play, also entitled *The Woodsman* (the "Play"), together with stage directions for puppets created by Ortiz and lyrics created in part by a woman named Jennifer Loring ("Loring").  The Play consists primarily of the Music, with added stage directions and

instances of screaming, but no spoken dialogue.  Ortiz's main contribution to the Play was creating stage directions and puppets that were intended to be used in performances of the Play, while Loring's primary contribution to the Play was lyrics.  The Play debuted in 2012 at Standard ToyKraft in Brooklyn, New York, followed by a performance at the Ars Nova ANT Fest in New York, New York in 2013.

9.      On January 28, 2014, Hardy registered the copyright for the Music.  Its registration number is PAU003712939.  A copy of the registration is attached hereto as Exhibit 1.

10.     Strangemen produced an off-Broadway run of the Play at 59E59 Theaters, in New York, New York from January 30, 2014 through February 16, 2014, and a second run from January 13, 2015 through February 22, 2015.  Hardy performed the Music at these performances of the Play.

**THE COMMISSION AGREEMENT**

11.     In June 2015, Hardy, Ortiz, and Loring entered into a written agreement ("the Commission Agreement") with Strangemen to set forth certain of their respective rights with respect to the Play.  The Commission Agreement was retroactively dated to January 1, 2015.  A copy of the Commission Agreement is attached hereto as Exhibit 2.  This copy includes highlighting and handwritten notes that were not part of the original Commission Agreement.

12.     Prior to Hardy's signing the Commission Agreement, Strangemen's Co-Artistic/Producing Director, Jason Ralph, assured Hardy that, with respect to the Music,  Hardy was "still and always will be the sole owner and copyright holder, that does not change with this agreement."

13.     In the Commission Agreement, Hardy, Ortiz, and Loring were collectively referred to as the "Playwright."

14. The Commission Agreement granted Strangemen "the right to purchase an exclusive option to present the Play on the live stage, in a world premiere engagement upon the terms and conditions contained incorporated herein. Provided the Producer is not otherwise in default of his obligations under this Agreement and will have made all payment as set forth herein, said exclusive right shall continue for the duration of the term set forth herein below."

**THE PRODUCTION AGREEMENT**

15. In September 2015, Hardy, Ortiz, and Loring signed a further agreement, dated September 14, 2015 (the "Production Agreement"), with Strangemen for further productions of the Play. The Production Agreement is attached hereto as Exhibit 3.

16. The Commission Agreement was expressly incorporated by reference into the Production Agreement.

17. Upon information and belief, no public performances of the Play were produced between the signing of the Commission Agreement in June 2015 and the signing of the Production Agreement in September 2015.

18. In the Production Agreement, Hardy, Ortiz, and Loring are collectively referred to as the "Author" of the Play, with Hardy additionally referred to as the "Composer" and Loring additionally as the "Lyricist."

19. Paragraph 1.a of the Production Agreement granted Strangemen an exclusive option to produce the Play in North America for a period of ten years, provided there was "no hiatus of production lasting for longer than four and a half (4 ½) months without a written commitment from the proposed next venue/theatre."

20. Paragraph 1.c of the Production Agreement provided that "Producer's right to produce the Play shall automatically terminate if Producer does not present the Play in a second-class production according to the terms of this Agreement by the end of the Term as may

4

be extended pursuant to the terms of Paragraph 1(a) of this Agreement."

21. The Production Agreement included a Collaboration Clause, which was attached to the Production Agreement as Exhibit A thereto (which is part of the Production Agreement attached hereto as Exhibit 3), and attached separately hereto as Exhibit 4, as to which Hardy, Ortiz, and Loring, but not Strangemen, were parties.

22. The Collaboration Clause divided the assets, claims, income, rights, profits, fees, receipts, and returns of whatever kind derived from the Play among Hardy, Ortiz, and Loring.

23. Paragraph 3 of the Collaboration Clause required "[a]ll contracts for production, presentation and publication of the Play, or the disposition of all rights connected therewith, and all author approvals, shall be subject to the mutual approval of the parties."

24. Paragraph 4 of the Collaboration Clause stated, "[a]ll decisions, both artistic and of a business nature, in connection with the Play, shall be determined by majority vote of the Author team, with each person comprising the Author having one vote."

25. Trade practice in the theater industry defines the difference between the subjects covered by the "mutual approval" rule in Paragraph 3 and the subjects covered by the "majority" rule in Paragraph 4. Paragraph 4 allows for the authors to engage in practical decision-making about the production process (approval of director and cast, or choosing a producer or publisher, for example) while paragraph 3 prevents a majority of authors from negotiating a contract with a third party that reduces the compensation or rights of the third author without that author's approval. The Dramatists Legal Defense Fund has issued an opinion to that effect.

26. From January 27, 2016 through May 29, 2016, a run of the Play was

performed at the New World Stages in New York, New York pursuant to the terms of the Production Agreement.  The Play was a critical success, receiving favorable reviews in The New York Times, Variety, and the New York Theatre Guide.

27.   Strangemen's exclusive rights under the Production Agreement terminated on September 13, 2016, pursuant to Paragraphs 1.a and 1.c of the Production Agreement.

28.   On January 31, 2017, Strangemen proposed to amend the already-expired Production Agreement to extend Strangemen's sole and exclusive option to present regional and second-class productions of the Play through January 31, 2018.  Strangemen's proposal became a purported Amendment No. 1 to the Production Agreement ("Purported Amendment No. 1").  A copy of Purported Amendment No. 1, as it was presented to Hardy. is attached hereto as Exhibit 5.

29.   On February 3, 2017, Hardy expressly refused to sign Purported Amendment No. 1.

30.   Upon information and belief, Ortiz, Loring, and Strangemen signed Purported Amendment 1 later in February 2017, and backdated it to September 15, 2016.

31.   Strangemen did not offer, nor did Hardy receive, any compensation for Purported Amendment No. 1.

32.   On March 17, 2017, Hardy, through his then-counsel, wrote to Strangemen, Ortiz, and Loring and demanded that they cease all activities related to the Play because Purported Amendment No. 1 was null and void without his consent.

33.   On March 4, 2018, Strangemen contacted Hardy to propose a second purported amendment to the Production Agreement ("Purported Amendment No. 2").  Purported Amendment No. 2 would have extended Strangemen's sole and exclusive option to present

regional and second-class productions of the Play through July 31, 2019. A copy of Purported Amendment No. 2, as it was presented to Hardy, is attached hereto as Exhibit 6.

34. On March 23, 2018, Hardy, through his then-counsel, stated that he would not consent to Purported Amendment No. 2, and that neither of the purported amendments could be properly executed or enter into effect without his consent.

35. Strangemen did not offer, nor did Hardy receive, any compensation for Purported Amendment No. 2.

**INFRINGEMENT OF HARDY'S COPYRIGHT AND BREACH OF THE COLLABORATION CLAUSE**

36. On or about May 24, 2016, Ortiz and Loring signed an agreement with BroadwayHD LLC ("BroadwayHD") purporting to permit it to record and later stream one of the Play's performances at the New World Stages on BroadwayHD's streaming service. Hardy did not consent to entering this agreement. On June 2, 2016, BroadwayHD issued Hardy a check for $2,583.50; Hardy never cashed this check. BroadwayHD is still streaming the Play through its streaming service.

37. Ortiz continued to license and/or produce the Play without Hardy's permission or authorization two years later, after Hardy refused to sign the Purported Amendment Nos. 1 and 2 with Strangemen, violating Hardy's rights under the Collaboration Clause and as the sole copyright owner of the Music.

38. On information and belief, on or about September 12, 2018, Ortiz signed a license agreement with Bluebarn Theatre ("Bluebarn"), located in Omaha, Nebraska, purporting to authorize Bluebarn to stage nineteen performances of the Play between May 16, 2019 and June 16, 2019 (the "License Agreement"). A copy of the License Agreement is attached hereto as Exhibit 7.

39.    Ortiz signed the License Agreement acting as if he were the sole author of the Play, in contravention to Hardy's rights under the Collaboration Clause and despite having no right or authority to license the Music.

40.    On information and belief, on or about October 24, 2018, Strangemen entered into a consultation agreement with Bluebarn to provide services related to its nineteen performances of the Play from May 16, 2019 through June 16, 2019 (the "Consultation Agreement").  A copy of the Consultation Agreement is attached hereto as Exhibit 8.  Upon information and belief, Strangemen executed this agreement.

41.    On information and belief, the Play was performed publicly numerous times at Bluebarn in May and June 2019, including performances of the Music.

42.    On information and belief, Ortiz was paid a fee under the terms of the License Agreement.

### FIRST CLAIM (AGAINST ORTIZ AND STRANGEMEN)

### Direct Copyright Infringement In Violation Of the Copyright Act

43.    Plaintiff incorporates by reference the preceding paragraphs as though set forth fully herein.

44.    At all times relevant hereto, Hardy has been and still is the sole owner of the exclusive rights under the Copyright Act in an original musical work that is fixed in a tangible medium of expression, the Music.

45.    On information and belief, Defendants have produced, reproduced, prepared derivative works based upon, distributed, and publicly displayed and performed the Music, without Hardy's permission.  Defendants' acts violate Hardy's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Hardy's exclusive rights to produce, reproduce, and distribute copies of his work, to create derivative works, and to publicly display

8

and perform his work.

46.    Defendants' infringement has been undertaken knowingly, willfully, and with intent to financially gain from Hardy's copyrighted work.  Accordingly, Defendants have directly infringed Hardy's copyrighted work.

47.    Because of Defendants' infringing acts, Hardy is entitled to his actual damages and Defendants' profits attributable thereto, in an amount to be proven at trial.

48.    In the alternative, at the election of Hardy, Hardy is entitled to recover from Defendants statutory damages up to $150,000 for the willful infringement of Hardy's protected work.

49.    Defendants' infringement has caused and continues to cause, irreparable harm to Hardy, for which he has no adequate remedy at law.  Unless this Court restrains Defendants from infringing Hardy's protected work, the harm will continue to occur in the future.  Accordingly, Hardy is entitled to permanent injunctive relief.

## SECOND CLAIM (AGAINST ORTIZ AND STRANGEMEN)

### Contributory Copyright Infringement In Violation Of the Copyright Act Arising from Bluebarn's Infringements

50.    Plaintiff incorporates by reference the preceding paragraphs as though set forth fully herein.

51.    On information and belief, Defendants participated in, assisted, enabled, materially contributed to, and encouraged Bluebarn's infringing performances of Plaintiff's work, the Music, and had the ability to take simple measures to prevent infringement. Defendants' infringement has been undertaken knowingly, willfully, and with intent to financially gain from Hardy's copyrighted work.  Accordingly, Defendants contributorily infringed Plaintiff's copyrighted works, in violation the Copyright Act, 17 U.S.C. §§ 106 and

9

501.

52.     Because of Defendants' infringing acts, Hardy is entitled to his actual damages and Defendants' profits attributable thereto in an amount to be proven at trial.

53.     In the alternative, at the election of Hardy, Hardy is entitled to recover from Defendants statutory damages up to $150,000 for the willful infringement of Hardy's protected work.

54.     Defendants' infringement has caused and continues to cause, irreparable harm to Hardy, for which he has no adequate remedy at law.   Unless this Court restrains Defendants from infringing Hardy's protected work, the harm will continue to occur in the future.   Accordingly, Hardy is entitled permanent injunctive relief.

### THIRD CLAIM (AGAINST ORTIZ AND STRANGEMEN)

### Contributory Copyright Infringement In Violation Of the Copyright Act Arising from BroadwayHD's  Infringements

55.     Plaintiff incorporates by reference the preceding paragraphs as though set forth fully herein.

56.     On information and belief, Defendants participated in, assisted, enabled, materially contributed to, and encouraged BroadwayHD's infringing recording and streaming of Plaintiff's work, the Music, and had the ability to take simple measures to prevent infringement. Defendants' infringement has been undertaken knowingly, willfully, and with intent to financially gain from Hardy's copyrighted work.   Accordingly, Defendants contributorily infringed Plaintiff's copyrighted works, in violation the Copyright Act, 17 U.S.C. §§ 106 and 501.

57.     Because of Defendants' infringing acts, Hardy is entitled to his actual damages and Defendants' profits attributable thereto in an amount to be proven at trial.

58.    In the alternative, at the election of Hardy, Hardy is entitled to recover from Defendants statutory damages up to $150,000 for the willful infringement of Hardy's protected work.

59.    Defendants' infringement has caused and continues to cause, irreparable harm to Hardy, for which he has no adequate remedy at law.   Unless this Court restrains Defendants from infringing Hardy's protected work, the harm will continue to occur in the future.  Accordingly, Hardy is entitled permanent injunctive relief.

## FOURTH CLAIM (AGAINST ORTIZ AND STRANGEMEN)

### Vicarious Liability for Copyright Infringement By Bluebarn In Violation Of the Copyright Act

60.    Plaintiff incorporates by reference the preceding paragraphs as though set forth fully herein.

61.    Defendants had the right and ability to supervise and control the infringing conduct of Bluebarn as described above in Paragraphs 38-40   Had Defendants not provided Bluebarn the sheet music, lyrics, and stage directions, from *The Woodsman*, Music and Play, and the puppets, Bluebarn could not have produced the infringing performances.   Defendants therefore controlled Bluebarn's ability to produce *The Woodsman* and actively participated in its production and the performance of the Music.

62.    Defendants' actions have been undertaken knowingly, willfully, and with intent to financially gain from Hardy's copyrighted work.  Defendants were paid for the license and granted paid consulting agreements.  Accordingly, Defendants are vicariously liable for the infringement of Hardy's copyrighted works by Bluebarn.

63.    Because of Defendants' wrongful conduct, Hardy is entitled to his actual damages and Defendants' profits attributable thereto in an amount to be proven at trial.

64.    In the alternative, at the election of Hardy, Hardy is entitled to recover

11

from Defendants statutory damages up to $150,000 for the willful infringement of Hardy's protected work.

65.    Defendants' infringement has caused and continues to cause, irreparable harm to Hardy, for which he has no adequate remedy at law.   Unless this Court restrains Defendants from infringing Hardy's protected work, the harm will continue to occur in the future.  Accordingly, Hardy is entitled permanent injunctive relief.

## FIFTH CLAIM (AGAINST ORTIZ AND STRANGEMEN)

### Vicarious Liability for Copyright Infringement By BroadwayHD In Violation Of the Copyright Act

66.    Plaintiff incorporates by reference the preceding paragraphs as though set forth fully herein.

67.    Defendants had the right and ability to supervise and control the infringing conduct of BroadwayHD as described above in Paragraph 36.  BroadwayHD could not have recorded and later streamed one of the Play's performances at the New World Stages on BroadwayHD's streaming service had Defendants not permitted it to do so.   Defendants therefore controlled BroadwayHD's ability to record and stream *The Woodsman* and actively participated in its recording and streaming of the Music.

68.    Defendants' actions have been undertaken knowingly, willfully, and with intent to financially gain from Hardy's copyrighted work.  Defendants were paid for the license. Accordingly, Defendants are vicariously liable for the infringement of Hardy's copyrighted works by BroadwayHD.

69.    Because of Defendants' wrongful conduct, Hardy is entitled to his actual damages and Defendants' profits attributable thereto in an amount to be proven at trial.

70.    In the alternative, at the election of Hardy, Hardy is entitled to recover from Defendants statutory damages up to $150,000 for the willful infringement of Hardy's

protected work.

71.     Defendants' infringement has caused and continues to cause, irreparable harm to Hardy, for which he has no adequate remedy at law.   Unless this Court restrains Defendants from infringing Hardy's protected work, the harm will continue to occur in the future.   Accordingly, Hardy is entitled permanent injunctive relief.

## SIXTH CLAIM (AGAINST ORTIZ)

### Breach of Contract – Paragraph 3 of the Collaboration Clause

72.     Plaintiff incorporates by reference the preceding paragraphs as though set forth fully herein.

73.     Pursuant to Paragraph 3 of the Collaboration Clause "[a]ll contracts for production, presentation and publication of the Play, or the disposition of rights connected therewith, and all author approvals, shall be subject to the mutual approval of the parties."

74.     Hardy is an "author" as defined under the Collaboration Clause.

75.     On information and belief, Ortiz entered into contracts for the production, presentation, and publication of the Play without Hardy's approval as required by Paragraph 3 of the Collaboration Clause.

76.     Ortiz's failure to obtain Hardy's approval to enter into these contracts is a breach of Paragraph 3 of the Collaboration Clause.

77.     Hardy has been injured by Ortiz's breaches of Paragraph 3 of the Collaboration Clause in an amount to be determined at trial.

## SEVENTH CLAIM (AGAINST ORTIZ)

### Breach of Contract – Paragraph 4 of the Collaboration Agreement

78.     Plaintiff incorporates by reference the preceding paragraphs as though set forth fully herein.

13

79.    Pursuant to Paragraph 4 of the Collaboration Agreement, "[a]ll decisions, both artistic and of a business nature, in connection with the Play, shall be determined by majority vote of the Author team, with each person comprising the Author having one vote."

80.    Hardy is an "author" as defined under the Collaboration Clause.

81.    On information and belief, Ortiz, by himself, entered into contracts for the production, presentation, and publication of the Play.

82.    These contracts constituted "decisions, both artistic and of a business nature, in connection with the Play…"   Ortiz had no authority to enter into these contracts without a "majority vote" of the Authors pursuant to the terms of Paragraph 4 of the Collaboration Agreement as Ortiz himself only had one vote.

83.    Ortiz's acts to enter into these contracts in the absence of a majority vote constitute breaches of Paragraph 4 of the Collaboration Clause.

84.    Hardy has been injured by Ortiz's breaches of Paragraph 4 of the Collaboration Clause in an amount to be determined at trial.

## EIGHTH CLAIM (AGAINST STRANGEMEN)

### Tortious Interference with Contract

85.    Plaintiff incorporates by reference the preceding paragraphs as though set forth fully herein.

86.    Strangemen has knowingly, intentionally and improperly interfered with the contractual obligations of Ortiz under the Collaboration Clause by conspiring with Ortiz to produce the Play without Plaintiff's consent and failing to obtain Plaintiff's input as to creative aspects of the Play.

87.    Hardy has been injured by Strangemen's interference with performance by Ortiz of his obligations to Hardy under the Collaboration Clause.

14

## Prayer for Relief

**WHEREFORE**, Plaintiff Hardy prays for judgment and relief against Defendants as follows:

A.   That this Court enter judgment in favor of Hardy and against Ortiz and Strangemen on all counts alleged herein.

B.   That this Court enter judgment permanently enjoining Defendants, their officers, agents, employees, and those acting in concert or conspiracy with them from:

   i.   Infringing, or contributing to or participating in the infringement by others the copyright in the Music or acting in concert with, aiding and abetting others to infringe said copyright in any way;

   ii.   Copying, duplicating, selling, licensing, displaying, distributing, or otherwise using without authorization copies of the Music to which Plaintiff is the copyright owner;

C.   That the Court enter judgment requiring Defendants to pay to Plaintiff the actual damages suffered by Plaintiff as a result of the infringement, in an amount to be proven at trial, and account for and pay to Plaintiff any profits of the Defendants attributable to the infringement of Plaintiff's copyright or exclusive rights under

15

copyright or, in the alternative, at Plaintiff's election, pay statutory damages to Plaintiff for infringement of Plaintiff's copyright as set forth in 17 U.S.C. § 504;

D.      For an award of costs under 17 U.S.C. § 505;

E.      For an award of attorneys' fees under 17 U.S.C. § 505;

F.      That the Court enter judgment against Ortiz to pay to Plaintiff the actual damages suffered by Plaintiff as a result of Ortiz's breaches of contract, in an amount to be proven at trial;

G.      That the Court enter judgment against Strangemen to pay to Plaintiff the actual damages suffered by Plaintiff as a result of its tortious interference with performance of the Collaboration Clause; and

H.      For such other or further relief as this Court deems just and proper.

Dated: New York, New York
       November 5, 2020

HUGHES HUBBARD & REED LLP

BY:   /s/ Michael E. Salzman

One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000
michael.salzman@hugheshubbard.com
*Attorneys for Plaintiff*
*Edward W. Hardy*

Of counsel:

Hannah Miller
Joanne Liu

16

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims and issues so triable.


Dated: New York, New York
        November 5, 2020

                                   HUGHES HUBBARD & REED LLP



                                   BY:  /s/ Michael E. Salzman


                                   One Battery Park Plaza
                                   New York, New York 10004-1482
                                   (212) 837-6000
                                   michael.salzman@hugheshubbard.com.
                                   *Attorneys for Plaintiff*
                                   *Edward W. Hardy*

17